```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
RASHAUN FERGUSON,             :
                              :      17-CV-6871 (ENV)(SJB)
              Plaintiff,      :
                              :      March 3, 2021
                              :
         V.                   :      Brooklyn, New York
                              :
CITY OF NEW YORK, et al.,     :
                              :
              Defendant.      :
------------------------------X


     TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
         BEFORE THE HONORABLE SANKET J. BULSARA
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        FRED LICHTMACHER, ESQ.
                          ANURADHA LAZARRE, ESQ.




For the Defendant:        GEOFFREY STANNARD, ESQ.



Audio Operator:



Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1              THE COURT:  This is Judge Bulsara.  Who is
 2   here for the plaintiffs?
 3              MR. LICHTMACHER:  Fred Lichtmacher.  Good
 4   afternoon, your Honor.
 5              THE COURT:  Good afternoon.
 6              Who is here for the defendants?
 7              MR. STANNARD:  Geoffrey Stannard for
 8   defendants, your Honor, and I believe there's one other
 9   attorney for the plaintiff.
10              MS. LAZARRE:  Your Honor, this is Anuradha
11   Lazarre for the plaintiffs.
12              THE COURT:  Okay.  Good afternoon to
13   everybody.
14              I see that Judge Vitaliano earlier today
15   entered a briefing schedule.  So he only question
16   really before me, and really it's, Mr. Lichtmacher, for
17   you at least in the first instance is the request to
18   subpoena additional information.  Is that something
19   you'd still like to proceed with?
20              MR. LICHTMACHER:  Yeah.  First of all, Logan
21   Smith, the principal to Goldie Maple School, viewed a
22   video with two officers.  She took their cards and
23   their names may be in the school log.  We didn't feel a
24   great sense of urgency because we knew at some point,
25   she would get them out of her drawer and give them to
```

1  us.  We were in contact with her.  However, then Covid
2  hit.  Now, she doesn't know if she's ever going to
3  return to the school.  So the names of the officers who
4  viewed the video, which is clearly extremely
5  exculpatory, and the officers let the video be
6  destroyed.  They didn't claim the video, they didn't
7  write in the DD-5 that they examined it.
8           So the names of those officers have become
9  more important to get independently, as Ms. Smith --
10 Logan-Smith, excuse me, is apparently not going back to
11 the school.  Those names could be written in the school
12 safety log.  When people enter the school, they're
13 supposed to have their names entered, although police
14 officers and detectives frequently do not; they will
15 just walk in.  So if I'm able to subpoena them, it
16 would be easier because as I said, she may never return
17 to the building.
18           THE COURT:  And is that the only subpoena?
19           MR. LICHTMACHER:  That's -- well, then
20 there's one other piece of information, number two.
21 This I didn't include it in my letter.  Bob DeDio (ph),
22 who was the criminal attorney in this case, who we
23 expected to testify for us, suddenly died a few weeks
24 ago, a good friend of mine, great criminal attorney.
25 He was going to be a witness in this case and one of

1   the things he was going to be a witness to was the fact
2   that there was never produced to him the name of the
3   witness to the five-foot-nine-inch person who viewed
4   the shooter.  Now, my client is probably six-foot-four,
5   so it's quite a discrepancy in the identification, you
6   know, in the description.
7           So with Mr. DeDio no longer able -- no
8   longer with us, there is a redacted document called a
9   preliminary investigation.  I did not find this
10  worksheet.  I did not find it terribly important in
11  light of the fact that Mr. DeDio was going to come in
12  and say during the trial nobody -- you know, we were
13  never given during the trial or in discovery the name
14  of a witness who saw a five-foot-nine-inch person, who
15  was the shooter, allegedly the shooter.  By the way, we
16  know who the shooter was.  He's been murdered
17  subsequently and he coincidentally was five-foot-nine
18  inches tall.
19          In the preliminary investigation worksheet,
20  which is generated the day of the shooting or the next
21  day, I forget.  I'm sorry, it's in front of me, the
22  next day.  There's a list of 21 people who made calls,
23  911 calls.  All their names are redacted.  There's a
24  possibility and probability that one of those people in
25  fact saw the person and said he was five-foot-nine

1  inches tall.  With Mr. DeDio no longer available, I
2  would like to have the names of those people.  Again,
3  earlier, I did not find that as important as I do now.
4  So I would like those names.
5          THE COURT:  Let's take these in turn.  Do
6  the defendants have any objection to the subpoena to
7  the principal school?
8          MR. STANNARD:  Yes, your Honor.  I mean,
9  this is something that should have been sought during
10 discovery.  The Logan-Smith testimony -- she was
11 deposed on April 4th, 2019.  She testified long before
12 Covid started.  They knew that she had said that she
13 couldn't remember the names of the officer who came to
14 visit her.  It's pure speculation that there's any such
15 log that would include these names, and it's basically
16 just a post-discovery fishing expedition that -- as
17 your Honor stated, we already have a date to propose a
18 briefing schedule for summary judgment.
19         This could delay that because if it turns
20 out that there is something with names on it, that will
21 affect defendants' strategy with respect to summary
22 judgment, obviously.  So our position is that this is
23 an improper attempt to continue discovery after the
24 deadline for completion of discovery.
25         THE COURT:  Okay, well, whether I grant or

1  deny the request for the subpoena on this item, it's
2  not going to affect the schedule.  The other part is,
3  Mr. Lichtmacher certainly could serve a trial subpoena
4  on the principal and force her to show up with these
5  documents at trial, right?
6              MR. LICHTMACHER:  May I respond, your Honor.
7  There's a problem with that.
8              THE COURT:  Hold on.  I didn't ask you the
9  question, I asked the defendants a question.
10             MR. LICHTMACHER:  I'm sorry, I thought you
11 were addressing it to me.  Forgive me.
12             THE COURT:  No, I said Mr. Lichtmacher could
13 do that, which is a question to Mr. Stannard.
14             So I don't know why, whether it's pre- or
15 post-discovery, if it's not being permitted to be used
16 in connection with summary judgment, he's not permitted
17 to serve the subpoena to get it.
18             MR. STANNARD:  Sorry, I don't think I
19 understand your Honor's question.
20             THE COURT:  He can serve a trial subpoena,
21 demand that the principal show up, not a witness within
22 his control.  And with that subpoena, with that Rule 45
23 subpoena, say, you have to show up at trial and you
24 have to bring these pieces of information, right?
25             MR. LICHTMACHER:  Yes.  So that's -- well, I

1   believe he could do that with respect to the notes that
2   the principal said she took that she believes are in
3   her desk, to which she is apparently never going back.
4   But I don't think that applies to these logs that
5   plaintiff believes might exist.  I think that would be
6   a separate issue.
7              THE COURT:  Okay, so there's no objection to
8   her -- to subpoenaing from, whether it's the Department
9   of Education or from the principal herself, these
10  pieces of information, the notes which clearly she
11  believes exist and she admitted to them -- testify
12  about.
13             Mr. Lichtmacher, I don't know who you're
14  going to direct the subpoena to.  I leave that to you.
15  But the subpoena for the notes that are in the desk, in
16  light of the fact that the only reason we don't have
17  them is because Covid, and there was a reasonable
18  expectation that you were going to get them, I will
19  permit you to subpoena those now.
20             As to the logbooks, I think defense counsel
21  is right.  This is not certainly a new concept.  And
22  frankly, it is a question of, you know, what are the
23  chances, frankly.  And unless I misunderstood, I think
24  you would even acknowledge that when police officers
25  actually walk into a school, they just literally walk

1  in.  They don't sign in.  So I'm inclined to deny and
2  will deny the request for the logbooks, but I will
3  permit you to subpoena for the notes that were in the
4  desk.
5              MR. LICHTMACHER:  That won't get them, your
6  Honor, and I'll explain why if I may.  Two things:
7  First of all, my adversary said whether or not there
8  are logbooks.  There are.  She testified to the fact
9  that the logbooks exist.  That's number one.  Number
10 two, I've been doing litigation against the DOE and I
11 know about these logbooks.  I've had issues with them
12 in two cases I'm dealing with right now, so the
13 information probably would be there.
14             And if I may, the reason the logbooks would
15 be efficient -- she may never want to walk back into
16 that school.  And if she doesn't, the way she described
17 her desk to us was like, I don't think anybody is going
18 to find it unless they go into her room, unlock her
19 drawer, and dump all the contents into her apartment.
20 It's possible that can be done but the simpler way is a
21 subpoena to the DOE.
22             And again, this wouldn't have been necessary
23 if it wasn't for Covid and that's why I don't believe
24 this is untimely.  Nobody could predict this was going
25 to happen.  Yes, she was deposed in April, April 4th,

```
 1   2019.  We were in touch with her and she said, yeah,
 2   I'll go through and I'll find it.  I think she even
 3   told us she'd stick her nose in the logbook if she
 4   couldn't for some reason get her hands on her notes
 5   with the officers' or the detectives' cards.
 6           THE COURT:  I don't understand, Mr.
 7   Lichtmacher.  I'm telling you, you can get the notes.
 8   If that means --
 9           MR. LICHTMACHER:  I don't think they can be
10   gotten to.  That's the problem.
11           THE COURT:  Isn't that a DOE problem, right?
12           MR. LICHTMACHER:  I hope so.
13           THE COURT:  If they literally have to come
14   and bring the desk into the courtroom and hand it over
15   to you, they will have to do that.
16           MR. LICHTMACHER:  Sounds good, I'm happy,
17   okay.
18           THE COURT:  The subpoena is for a particular
19   item identified by a witness that exists.  Unless they
20   go in and search for it and get it -- it's not like the
21   desk is in a contaminated nuclear facility.  That was
22   my point about, you could serve the subpoena.  We'll
23   talk about what compliance looks like but -- the notes
24   are the critical element.  I'm not going to permit the
25   logbook because if you have the notes, you don't need
```

1   the logbook, and I do question whether the logbook
2   would have the information but you can cross that
3   bridge when you want, though.  I'm telling you, you can
4   get the notes.  That the principal can't get them from
5   her desk or isn't going back to school, you know, that
6   is a position that exits outside of litigation perhaps
7   but we're in litigation.
8             Now, with respect to the -- with respect to
9   the second item -- and I'm sure -- well, I'll let you
10  talk with Mr. Stannard or other counsel who wants to
11  represent the DOE, if there is such a thing, about how
12  to get the notes but that's all we're talking about.
13  She was going to do it voluntarily and now, with the
14  subpoena, she has to do it because via court order.
15            MR. LICHTMACHER:  May I ask a question about
16  the subpoena, a quick question?
17            THE COURT:  Yes.
18            MR. LICHTMACHER:  When you say trial
19  subpoena, does that mean I have to wait until the trial
20  to -- which is what we usually do with trial subpoenas,
21  or can I do that subpoena now?
22            THE COURT:  That was my point.  That was my
23  point.  My point was that because this was a piece of
24  information identified during discovery, you can serve
25  a trial subpoena at trial to get it at trial, which is

```
 1   the reason why the pure discovery cutoff argument
 2   wasn't holding that much water with me.  As a result,
 3   I'm going to permit you to get it now but I'm not going
 4   to permit the changing of the discovery schedule.
 5              MR. LICHTMACHER:  Understood.
 6              THE COURT:  But the logbooks, you know, I
 7   accept defendants' argument at this point.  To me, they
 8   sit in a different category when I think there was a
 9   reasonable reliance and expectation on the notes that
10   you were going to get them, so you're going to get them
11   now but we're not going to delay the summary judgment
12   briefing.
13              Now, as to -- is there any other item at
14   this point?
15              MR. LICHTMACHER:  The preliminary
16   investigation report is the one that's redacted, the
17   one I discussed in (ui).
18              THE COURT:  I'm sorry, that's right.  What I
19   didn't understand from what you were saying -- are you
20   saying these were in the possession of criminal defense
21   counsel and, therefore, you don't have access to them
22   now?
23              MR. LICHTMACHER:  Not at all.  We have
24   redacted copies of the preliminary investigation
25   report.  There are 21 names redacted in that report, 21
```

1  people who called 911.  They write in the report, which
2  is generated right after the incident, that the person
3  is identified as being five-foot-nine inches tall.  I
4  explained the discrepancy with my plaintiff already.
5           THE COURT:  I see.  And where did you get
6  the report from?  Was it through your own
7  investigation, was it through information criminal
8  defense counsel gave you, or was it produced by the
9  defendants here?
10          MR. LICHTMACHER:  By the D.A.  I subpoenaed
11 the D.A.  They provided it to both sides, their entire
12 file.
13          THE COURT:  And did they provide a basis for
14 the redactions?
15          MR. LICHTMACHER:  At that point, when I had
16 discussions -- I forgot the person's name.  I have it
17 in my file.  He's an A.D.A. in charge of these things,
18 said there was no reason for you to get them and there
19 were safety measures involved.
20          THE COURT:  So I think the proper means,
21 frankly, to deal with this is, you need to -- it's not
22 really an issue between you and corporation counsel,
23 right?  It's an issue between you and the D.A.'s
24 office.  I think you need to --
25          MR. LICHTMACHER:  Well, if I may.

```
 1              THE COURT:  Give me one second.  You've got
 2   to tell them that you'd like either a letter request,
 3   which if they fail to agree with, you need to file a
 4   motion to unredact the document and give them an
 5   opportunity to be heard.
 6              MR. LICHTMACHER:  If I may, your Honor.
 7              THE COURT:  Yes, go ahead.
 8              MR. LICHTMACHER:  The city should have the
 9   unredacted document.  I don't know about my adversary
10   and I'm not accusing him of anything and I mean that.
11   But it is a city-produced document generated by
12   Sergeant Lopez.  It would be accessible to the NYPD in
13   unredacted form.  Juan A. Lopez is the sergeant and
14   I've forgotten what his exact title is.  He's from --
15   he's a BRAM sergeant from the 101st, B-R-A-M sergeant
16   101st.  I don't remember what the acronym stands for.
17   So they would have it, number one.
18              Again, I didn't have a need for this before
19   and when my buddy died, it became a different ball
20   game.  I would like somebody to come to court and say
21   what wasn't there.  There was a person identified and
22   he wasn't there.  Now I'd like to get the person to
23   replace Mr. DeDio.
24              THE COURT:  This doesn't have to be resolved
25   before summary judgment, right?
```

```
 1            MR. LICHTMACHER:  No, it does not, your
 2   Honor, it does not.
 3            THE COURT:  Because I'm assuming that there
 4   are perhaps other documents that you would like
 5   unredacted for trial purposes.
 6            MR. LICHTMACHER:  At this point, we were
 7   able to determine almost everything that was redacted,
 8   what it would pertain to, for instance the Wheeling
 9   (ph) incident, so there's very little.  The files are
10   possibly 7,000 pages.  I've gone through it all and I'm
11   able to decipher just about everything I need, except
12   for this.
13            THE COURT:  Okay.  I don't think we need to
14   address this now.  We can deal with it after summary
15   judgment and then I think we can go from there.
16            MR. LICHTMACHER:  Okay.  All right, I'll
17   serve the subpoena now.
18            THE COURT:  Sorry, what?
19            MR. LICHTMACHER:  I'll serve the subpoena
20   now for the -- probably on the DOE and on Ms. Smith,
21   because she may not be able to get into the building.
22   I'll find out from her exactly where they are in her
23   desk and if I have to, I'll have the desk brought to
24   the court.  I can't get into the court.  I'll have it
25   brought to my home office.  How is that, your Honor?
```

1  Does that work?
2              THE COURT:  Wherever it needs to be.  I
3  think we can come up with measures short of bringing
4  the desk.
5              But before we let everyone go of course, Mr.
6  Stannard, anything you'd like to say or be heard on any
7  of these issues at this point?
8              MR. STANNARD:  Well, I know we're not really
9  crossing the bridge regarding the 911 callers but I
10 would just point out to the Court and to plaintiff's
11 counsel that the Sprint reports for this case were
12 produced and I think a review of those reports will
13 show that none of the 911 callers actually saw the
14 shooter.  Mr. Lichtmacher, can correct me if I'm wrong,
15 if he knows otherwise, but my reading of it was that
16 they did not see the shooter.
17             So if the purpose that he's looking -- that
18 he wants these names, which are, you know, private --
19 there are privacy concerns about 911 callers.  If the
20 purpose for getting the names is to find out someone
21 that identified the shooter as being 5'9", I don't
22 think he's going to get far with that.  That's all I
23 wanted to say.
24             THE COURT:  Okay, we can take it up --
25             MR. LICHTMACHER:  That is incorrect.  He's

1  incorrect (ui).
2          THE COURT:  We'll deal with it later.  I'll
3  say to both sides, Mr. Lichtmacher, you can consider
4  what Mr. Stannard has said.  I also say that privacy
5  concerns frankly go nowhere in this Court for redaction
6  purposes when there's a protective order.  So the
7  D.A.'s office can think about that but, you know, if
8  the log has to match the Sprint records or whatever, if
9  the only argument is privacy concerns of an individual,
10 that's not going anywhere with me and it never has in
11 this Court because we're talking about -- because of
12 the protective order.  Of course, that takes on
13 different significance if we're talking about it in
14 connection with trial but I'm not deciding that now.
15         I take it, Mr. Stannard, there's nothing you
16 want to say with respect to the subpoena for the notes
17 in the desk.
18         MR. STANNARD:  Nothing further, no.
19         THE COURT:  Okay, all right.  I wish you all
20 good health and have a nice day.
21         MR. STANNARD:  Thank you, your Honor.
22         MR. LICHTMACHER:  Stay healthy, your Honor,
23 thank you.
24                  * * * * * *
25

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18       I certify that the foregoing is a correct
19  transcript from the electronic sound recording of the
20  proceedings in the above-entitled matter.
21
22
23   [signature]
24
25  ELIZABETH BARRON                        March 23, 2021
```