17-CV-6871 (ENV)(SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RASHAUN FERGUSON,

Plaintiff,

- against -

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD # 464 and
UNIDENTIFIED MEMBERS OF THE NYPD all sued herein in
their individual capacities,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Gildea, and Jaeger*
*100 Church Street, Third Floor*
*New York, New York 10007*

*Of Counsel: Geoffrey M. Stannard*
*Tel: (212) 356-2409*
*Matter No.: 2017-067771*

**SERVED APRIL 16, 2021**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT

    POINT I

        PLAINTIFF'S FEDERAL AND STATE LAW MALICIOUS PROSECUTION CLAIMS (COUNTS 1 AND 3) FAIL BECAUSE THERE WAS PROBABLE CAUSE TO PROSECUTE ....................................... 7

        A. There was probable cause to prosecute and plaintiff cannot overcome the presumption of probable cause created by his indictment. ...........................................10

            i. Evans's photo array and lineup identifications provided probable cause to prosecute, and defendants did not coerce the identifications.......................................................10

            ii. There is no evidence that the defendants falsified Wheeling's statements or coerced his identification, nor was plaintiff's indictment procured by such alleged conduct. .....................................................................12

            iii. The defendants did not suppress video evidence. ......................................................13

        B. Plaintiff cannot demonstrate actual malice as a motivation for defendants' actions. ....................................................15

    POINT II

        PLAINTIFF'S DENIAL OF FAIR TRIAL CLAIM (COUNT 2) FAILS BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS FABRICATED OR SUPPRESSED EVIDENCE .................................... 16

**Page**

    A.   Plaintiff cannot show a denial of fair trial based on allegedly fabricated statements of Wheeling. ...............................17

    B.   Plaintiff cannot show a denial of fair trial based on suggestive or coerced identification procedures. ...........................................................................18

    C.   Plaintiff cannot prove a denial of fair trial claim based on a Brady violation because he was acquitted. ...............................................................................19

POINT III

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS' ACTIONS WERE OBJECTIVELY UNREASONABLE ............................................................. 20

CONCLUSION ............................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Pages**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).........................................................................................................6, 7

Ashley v. City of New York,
    No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201
    (E.D.N.Y. Apr. 17, 2017)...............................................................................................16

Azrielli v. Cohen Law Offices,
    21 F.3d 512 (2d Cir. 1994)...............................................................................................6

Bellamy v. City of New York,
    914 F.3d 727 (2d Cir. 2019)...........................................................................................16

Betts v. Shearman,
    751 F.3d 78 (2d Cir. 2014)..............................................................................................21

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994)..............................................................................................20

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002).............................................................................15

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001)................................................................................................8

Danielak v. City of New York, et al.,
    No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901
    (E.D.N.Y. Sept. 26, 2005).................................................................................................7

Davenport v. City of N.Y.,
    No. 15-CV-5890 (MKB), 2017 U.S. Dist. LEXIS 160412
    (E.D.N.Y. Sep. 28, 2017)..................................................................................................8

Dorsainvil v. City of New York.,
    No. 19-CV-02323 (RPK) (SMG), 2020 U.S. Dist. LEXIS 206407
    (E.D.N.Y. Nov. 4, 2020)....................................................................................................1

Dufort v. City of New York,
    874 F.3d 338 (2d Cir. 2017)..............................................................................................7

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)............................................................................................21

**Cases**                                                                                                    **Pages**

Falls v. Pitt,
    No. 16-CV-8863 (KMK), 2021 U.S. Dist. LEXIS 58197
    (S.D.N.Y. Mar. 26, 2021) ...........................................................................................16

Fappiano v. City of New York,
    640 F. App'x 115 (2d Cir. 2016) ...........................................................................19

Frost v. N.Y.C. Police Dep't,
    980 F.3d 231 (2d Cir. 2020)............................................................................17, 18

Fulton v. Robinson,
    289 F.2d 188 (2d Cir. 2002)....................................................................................15

Goenaga v. March of Dimes Birth Defects Found.,
    51 F.3d 14 (2d Cir. 1995).........................................................................................6

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. 2013).....................................................................................20

Greene v. City of New York.,
    No. 08-CV-00243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243
    (E.D.N.Y. Mar. 15, 2017)
    affirmed by 742 F. App'x 532 (2d Cir. 2018)...............................................8, 9, 13

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)................................................................................................20

Hernandez v. United States,
    939 F.3d 191 (2d Cir. 2019).....................................................................................7

Hunter v. Bryant,
    502 U.S. 224 (1991) (per curiam) ...........................................................................21

Hutchins v. Solomon,
    No. 16-CV-10029 (KMK), 2018 U.S. Dist. LEXIS 169421
    (S.D.N.Y. Sep. 29, 2018) ........................................................................................19

Jones v. Treubig,
    963 F.3d 214 (2d Cir. 2020).....................................................................................20

Jovanovic v. City of New York,
    486 F. App'x 149 (2d Cir. 2012) ...........................................................................16

Jovanovic v. City of New York,
    No. 04-CV-8437, 2010 U.S. Dist. LEXIS 144388
    (E.D.N.Y., September 28, 2010), affirmed by 486 F. App'x 149 (2d Cir. 2012)...................18

iv

**Cases**                                                                                   **Pages**

Keith v. City of New York,
    641 F. App'x 63 (2d Cir. 2016) ................................................................8

Lowth v. Town of Cheektowaga,
    82 F.3d 563 (2d Cir. 1996) ...................................................................14

Major League Baseball Props., Inc. v. Salvino, Inc.,
    542 F.3d 290 (2d Cir. 2008) ...................................................................6

Maldonado v. City of New York,
    No. 11-CV-3514 (RA), 2014 U.S. Dist. LEXIS 26239
    (S.D.N.Y. Feb. 26, 2014) ...................................................................8, 9

Malley v. Briggs,
    475 U.S. 335 (1986) ...........................................................................21

Manganiello v. City of New York,
    612 F.3d 149 (2d Cir. 2010) ............................................................7, 8, 9

McClean v. Cty. of Westchester,
    No. 17-CV-4492 (CS), 2018 U.S. Dist. LEXIS 204269
    (S.D.N.Y. Dec. 3, 2018) ......................................................................19

Miloslavsky v. AES Eng'g Soc'y, Inc.,
    808 F. Supp. 351 (S.D.N.Y. 1992),
    aff'd, 993 F.2d 1534 (2d Cir. 1993) ....................................................8, 10, 21

Moroughan v. Cty. of Suffolk,
    No. 12-CV-0512 (EN)(AKT), 2021 U.S. Dist. LEXIS 13138
    (E.D.N.Y. Jan. 20, 2021) .....................................................................16

Nardelli v. Stamberg,
    44 N.Y.2d 500 (1978) .........................................................................14

Pearson v. Callahan,
    555 U.S. 223, 129 S. Ct. 808 (2009) ......................................................20

Podell v. Citcorp Diners Club, Inc.,
    112 F.3d 98 (2d Cir. 1997) .....................................................................7

Posr v. Court Officer Shield No. 207,
    180 F.3d 409 (2d Cir. 1999) ....................................................................7

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    582 F.3d 244 (2d Cir. 2009) ...................................................................12

**Cases**                                                                                          **Pages**

Ricciuti v. N.Y.C. Transit Auth.,
    124 F.3d 123 (2d Cir. 1997)......................................................................16

Roe v. City of Waterbury,
    542 F.3d 31 (2d Cir. 2008)........................................................................6

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)......................................................................7, 8

Simpson v. City of New York,
    793 F.3d 259 (2d Cir. 2015)....................................................................21

Stukes v. City of New York,
    No. 13-CV-6166 (NGG)(VVP), 2015 U.S. Dist. LEXIS 33223
    (E.D.N.Y. Mar. 17, 2015) ......................................................................9, 14

Sulkowska v. City of New York,
    129 F. Supp. 2d 274 (S.D.N.Y. 2001)......................................................15

Ventillo v. Falco,
    No. 19-CV-03664 (PMH), 2020 U.S. Dist. LEXIS 239540
    (S.D.N.Y. Dec. 18, 2020)........................................................................19

Walker v. City of New York,
    No. 11-CV-314 (CBA), 2014 U.S. Dist. LEXIS 197314,
    2014 WL 12652345 (E.D.N.Y. Sept. 3, 2014) ........................................16

Wilson v. McMullen,
    No. 07-CV-948 (SLT) (LB), 2010 U.S. Dist. LEXIS 32335
    (E.D.N.Y. Mar. 30, 2010) ......................................................................15

Wray v. City of New York,
    490 F.3d 189 (2d Cir. 2007)..................................................................17, 18

Zahrey v. Coffey,
    221 F.3d 342 (2d Cir. 2000)......................................................................9

**Statutes**

Fed. R. Civ. P. 56(a) ....................................................................................6

42 U.S.C. § 1983.................................................................................1, 16, 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

RASHAUN FERGUSON,

                                     Plaintiff,

                -against-

THE CITY OF NEW YORK, DETECTIVE JAEGER,
DETECTIVE MICHAEL GILDEA SHIELD # 464 and
UNIDENTIFIED MEMBERS OF THE NYPD all sued
herein in their individual capacities,

                                 Defendants.
---------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

17-CV-6871 (ENV)(SJB)

## PRELIMINARY STATEMENT

        Reginald Evans and his brother Keith Gulley were shot in front of Evans's young children. While Evans survived, Gulley died as a result of his injuries. Evans later identified plaintiff as the shooter in a photo array, a line-up identification, before a grand jury, and at plaintiff's criminal trial. Despite Evans's repeated identification of plaintiff as the perpetrator, plaintiff now alleges that he was maliciously prosecuted and, despite being acquitted at his criminal trial, denied the right to a fair trial.[1] Defendants City of New York, Detective Michael Gildea, and Detective Quinn Jaeger now move for summary judgment on the grounds that (1) plaintiff's federal and state law malicious prosecution claims fail because there was probable cause to prosecute and plaintiff cannot establish malice; (2) plaintiff has failed to establish any fabrication of evidence that impeded his right to a fair trial; and (3) the individual defendants are entitled to qualified immunity.

---

[1] Plaintiff does not purport to assert a false arrest claim, as any such claim would be barred by the three-year statute of limitations. See Dorsainvil v. City of New York., No. 19-CV-02323 (RPK) (SMG), 2020 U.S. Dist. LEXIS 206407, at *8 (E.D.N.Y. Nov. 4, 2020) (statute of limitations for false arrest claims is three years from date the false imprisonment ends or the plaintiff is arraigned). Nor does plaintiff bring a § 1983 claim for municipal liability against the City of New York.

## STATEMENT OF FACTS

On May 3, 2013, Reginald Evans was watching his children play outside of 54-30 Beach Channel Drive, in the Edgemere housing complex ("Edgemere") in Queens, New York, when his brother Keith Gulley arrived. Defs. 56.1 ¶¶ 1-2. While Evans and Gulley were talking, a gunman approached them and shot both Gulley and Evans multiple times. Id. ¶ 3.

At approximately 8:08 p.m., Detective Jaeger and Detective Gildea were notified of the shooting by police radio. Id. ¶ 4. Shortly thereafter, nonparty Police Officer Alfonso Vargas responded to the scene of the shooting and encountered Orris Wheeling, who identified himself as a witness to the events surrounding the shooting. Id. ¶ 5. Wheeling informed Vargas that the perpetrator fled in a dark gray Ford Escape with New York license plates heading westbound. Id. ¶ 6. At 8:18 p.m., either Vargas or his supervisor made a radio report of a dark gray Ford Escape heading westbound. Id. ¶ 7.

At 8:20 p.m., Detective Gildea and Detective Jaeger arrived at the scene, where they encountered Gulley and Evans, who had each sustained gunshot wounds. Id. ¶¶ 8-9. Gulley was transported to St. John's Hospital, where he was pronounced dead at 9:05 p.m. Id. ¶ 10. Evans was also transported to a hospital, where it was determined he was likely to survive his injuries. Id. ¶ 11.

At approximately 9:15 p.m., Detective Gildea and Detective Jaeger interviewed Wheeling. Id. ¶ 12. Wheeling told Detective Gildea and Detective Jaeger the following:

> Prior to the shooting, Wheeling was working on his vehicle, which was parked on Beach 56th Street. While working on his vehicle, Wheeling saw a gray Ford SUV pull onto the block from Beach Channel Drive. Wheeling recognized the SUV's driver as a person who went by the name "Man" and lived in the Ocean Village housing complex. A black male exited the SUV's passenger side, took a couple of steps, then returned to the SUV. Someone from within the SUV said "take your shoes off." The same black male then exited the SUV, without shoes on, and proceeded toward

2

> Edgemere. Moments later, Wheeling heard multiple gun shots coming from Edgemere. The same black male ran back to the SUV from Edgemere with a gun in his hand. The black male re-entered the passenger side of the gray SUV, which then sped off down Beach 56 Street.

Id. ¶ 13.

Detective Gildea observed a surveillance camera at Goldie Maple Academy, a school located at 365 Beach 56th Street, but because it was not pointed north toward the intersection where the incident occurred, he determined it would not be of any value and neither he nor Detective Jaeger made any attempt to view or retrieve any video from the school. Id. ¶ 14.

Detective Gildea learned that members of the NYPD had on prior occasions stopped plaintiff Rashaun Ferguson while he was driving a gray Ford Escape bearing New York License Plate No. GDX 7434 in the vicinity of Edgemere. Id. ¶ 15. Detective Gildea conducted a Department of Motor Vehicles check, which revealed that License Plate No. GDX 7434 was registered to a gray 2003 Ford Escape, which was owned by plaintiff's mother, Monet Pierre. Id. ¶¶ 16-17.

Detective Gildea obtained a computer-generated photo array consisting of photographs of plaintiff and five other individuals. Id. ¶ 18. On May 4, 2013, Detective Gildea and Detective Jaeger presented the photo array to Wheeling. Id. ¶ 19. Wheeling identified plaintiff in the photo array as the gunman he saw near the scene of the shooting Id. ¶ 20. Wheeling wrote his initials on the Photo Array Pre-Viewing Instructions, signed his name on the Photo Array Viewing Report, signed his name under plaintiff's photograph, and wrote "this is the guy I saw with the gun" under the photo array. Id. ¶ 21. On May 4, 2013, Detective Gildea generated an I-Card for plaintiff based on Wheeling's positive photo array identification. Id. ¶ 22.

On May 4, 2013, Detective Gildea and Detective Jaeger visited Evans in the hospital and attempted to show him the previously generated photo array. Id. ¶ 23. Evans, who at the time was not aware that Gulley had died, refused to provide any information or make any identification. Id. ¶¶ 23-24.

On May 4, 2013, nonparty detectives Velsor and Cappolla went to Goldie Maple Academy, a school located at 365 Beach 56th Street, to attempt to view video from the school's surveillance cameras, but were unable to view the video because they were told that the video would not be accessible until May 6, 2013 when the school's principal returned to work. Id. ¶ 25. Detectives Gildea and Jaeger are unaware of whether nonparty detectives Velsor or Cappolla ever returned to the school to view the video. Id. ¶ 26.

On May 6, 2013, plaintiff was apprehended and taken into custody. Id. ¶ 27. On May 7, 2013 at 12:01 a.m., plaintiff was placed in a lineup in the presence of Detective Gildea, Detective Jaeger, and Assistant District Attorney Kristin Fraser, and the lineup was presented to Wheeling. Id. ¶ 28. Wheeling did not make an outright positive identification, but made several references to plaintiff, stating that he "looks like the guy but his skin color is off." Id. ¶ 29. After viewing the lineup, Wheeling stated to Detective Gildea, "I can't be the only one doing this." Id. ¶ 30. After Wheeling did not make an outright positive identification, Detective Gildea voided plaintiff's arrest and released him from custody. Id. ¶ 31.

On May 7, 2013, Detective Gildea spoke with Evans's wife, who informed Gildea that Evans would be willing to meet with Gildea. Id. ¶ 32. On May 9, 2013, Detective Gildea and Detective Jaeger showed Evans the previously generated photo array, and Evans identified plaintiff as the perpetrator. Id. ¶¶ 33-34. Evans signed his name under plaintiff's photograph and wrote "that's the guy that walk [sic] up and shot me" under the photo array. Id. ¶ 35. Evans told

Detective Gildea and Detective Jaeger that the reason he previously refused to make an identification was that he believed Gulley was still alive and didn't want to get involved because it is "street code" not to "snitch," but chose to cooperate after learning that his brother had died. Id. ¶ 36. After Evans made a positive photo array identification, Detective Gildea reached out to nonparty Detective Thompson and requested that he attempt to locate and apprehend plaintiff. Id. ¶ 37.

On January 27, 2014, once plaintiff was located, nonparty police officers apprehended plaintiff and took him into police custody. Id. ¶ 38. At approximately 9:48 p.m., plaintiff was placed in a lineup in the presence of Detective Jaeger, Assistant District Attorney Briana Heymann, and plaintiff's criminal defense attorney, Scott Brettschneider. Id. ¶ 39. The lineup was presented to Evans, who again identified plaintiff as the gunman who shot him and Gulley. Id. ¶¶ 40-41. Plaintiff was arrested. Id. ¶ 42. On January 28, 2014, Detective Jaeger signed a criminal court complaint charging plaintiff with Murder in the Second Degree, Attempted Murder in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. Id. ¶ 43.

On November 3, 2014, an Assistant District Attorney presented the charges against plaintiff to a grand jury. Id. ¶ 44. Evans appeared before the grand jury and testified that plaintiff shot him and Gulley. Id. ¶ 45. Evans was the only witness to the incident to testify before the grand jury. Id. ¶ 46. On November 20, 2014, the grand jury indicted plaintiff on charges including Murder in the Second Degree and Attempted Murder in the Second Degree. Id. ¶ 47.

The charges against plaintiff proceeded to trial in 2017. Id. ¶ 48. At the trial, Evans once again testified that plaintiff shot him and Gulley. Id. ¶ 49. The defense called Angela

Logan-Smith, principal of Goldie Maple Academy, as a trial witness. Id. ¶ 50. Logan-Smith testified that on May 6, 2013, two police officers came to Goldie Maple Academy and viewed surveillance footage from a camera pointed at a portion of Beach 56th Street. Id. ¶ 51. The camera did not depict the intersection of Beach Channel Drive and Beach 56th Street. Id. ¶ 52. Logan-Smith testified that on the video "you could see a person run by and a few seconds later a car went by," and testified that the car was a "dark sedan." Id. ¶ 53. Logan-Smith testified that someone watching the video would not be able to determine "facial features and specifics of the individual." Id. ¶ 54. She further testified that "[y]ou could make out that there was a person. You can make out just general, like, superficial details of the person." Id. She further testified that the video was not of sufficient quality to see if the person was holding something. Id. Logan-Smith does not know the identities the officers that viewed the surveillance footage. Id. ¶ 55. Neither Detective Gildea nor Detective Jaeger ever viewed any surveillance footage recorded by any of Goldie Maple Academy's surveillance cameras. Id. ¶ 56. Neither Detective Gildea nor Detective Jaeger has ever met Logan-Smith. Id. ¶ 57.

On October 16, 2017, the jury returned a verdict acquitting plaintiff of all charges. Id. ¶ 58.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and *admissible evidence* proffered to the district court show that there is 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (emphasis added) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" Id. (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994)).

Factual disputes will only defeat a motion for summary judgment when those factual disputes are material or relevant to the issues before the court. Indeed, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." Id.; accord Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A party may not oppose summary judgment by merely offering conclusory allegations or denials. See Podell v. Citcorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997). Thus, to sustain his burden, plaintiff must produce evidence that would permit the finder of fact to properly proceed to a verdict in his favor. Anderson, 477 U.S. at 248-50.

## ARGUMENT

### POINT I

### PLAINTIFF'S FEDERAL AND STATE LAW MALICIOUS PROSECUTION CLAIMS (COUNTS 1 AND 3) FAIL BECAUSE THERE WAS PROBABLE CAUSE TO PROSECUTE

To prevail on a malicious prosecution claim under New York law, a plaintiff must prove "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." Dufort v. City of New York,

874 F.3d 338, 350 (2d Cir. 2017). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010) (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). Probable cause to prosecute "must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of the arrest." Danielak v. City of New York, et al., No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901, at *33 (E.D.N.Y. Sept. 26, 2005) (internal quotation and citation omitted).

"Officers have probable cause when 'they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019) (quoting Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)). More specifically, police officers have probable cause to arrest if they receive "information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993); see also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). "Absent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." Davenport v. City of N.Y., No. 15-CV-5890 (MKB), 2017 U.S. Dist. LEXIS 160412, at *19 (E.D.N.Y. Sep. 28, 2017) (internal quotation marks omitted) (quoting Keith v. City of New York, 641 F. App'x 63, 65 (2d Cir. 2016)). Moreover, "the veracity of citizen complaints who are the victims of the very crime they report to the police is assumed." Miloslavsky, 808 F. Supp. at 355.

In addition, an indictment by a grand jury creates a presumption of probable cause that "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello, 612 F.3d at 162 (internal quotation marks omitted). Even where a plaintiff makes such showing, however, "the existence of probable cause independent of the allegedly falsified evidence is a defense to a malicious prosecution claim.'" Maldonado v. City of New York, No. 11-CV-3514 (RA), 2014 U.S. Dist. LEXIS 26239, at *24 (S.D.N.Y. Feb. 26, 2014). "The plaintiff bears the burden of proof to rebut the presumption created by the grand jury indictment, and must provide more than mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." Greene v. City of New York., No. 08-CV-00243 (AMD) (CLP), 2017 U.S. Dist. LEXIS 37243, at *61-62 (E.D.N.Y. Mar. 15, 2017) affirmed by 742 F. App'x 532, 534 (2d Cir. 2018) (quoting  Savino, 331 F.3d at 73). While the suppression of evidence can be used to rebut the presumption of probable cause in some circumstances, "police officers act in bad faith only when they fail to disclose evidence that would *conclusively establish the plaintiff's innocence* or negate the possibility that plaintiff had committed the crime." Stukes v. City of New York, No. 13-CV-6166 (NGG)(VVP), 2015 U.S. Dist. LEXIS 33223, at *17 (E.D.N.Y. Mar. 17, 2015) (internal citations omitted) (emphasis added).

Moreover, "the plaintiff must establish some connection between the alleged falsification of evidence and the procurement of the indictment." Greene, 2017 U.S. Dist. LEXIS 37243, at *62. In other words, the plaintiff must show that the alleged falsified evidence was actually used in the grand jury. See Zahrey v. Coffey, 221 F.3d 342, 352 (2d Cir. 2000) (holding that a plaintiff's liberty was not impaired "until, after the evidence was both fabricated *and used*

*by introducing it in evidence before the grand jury*, an indictment was later returned and Zahrey

was later arrested.") (emphasis added).

**A.    There was probable cause to prosecute and plaintiff cannot overcome the presumption of probable cause created by his indictment.**

Here, plaintiff was indicted, and thus it must be presumed that there was probable

cause to prosecute. Defs. 56.1 ¶ 47; Manganiello, 612 F.3d at 162. Plaintiff therefore has the

burden of proving that his indictment was procured by fraud, perjury, suppression of evidence, or

other bad faith conduct. See id. Plaintiff, however, has failed to establish any evidence, aside

from his own conclusory and speculative allegations, that the indictment was procured by

unlawful conduct on the part of the defendants. Even if plaintiff could prove that the defendants

engaged in bad faith conduct in order to procure plaintiff's indictment—which he cannot—his

claim would still fail because there was probable cause independent of any allegedly falsified

evidence, which is a complete defense to a malicious prosecution claim. See Maldonado, 2014

U.S. Dist. LEXIS 26239, at *24.

**i.    Evans's photo array and lineup identifications provided probable cause to prosecute, and defendants did not coerce the identifications.**

Evans, the sole surviving shooting victim, identified plaintiff as the perpetrator in

a photo array and a lineup before the prosecution was initiated. Defs. 56.1 ¶¶ 34-43. Later, Evans

would go on to identify plaintiff as the perpetrator before the grand jury and at plaintiff's

criminal trial. Defs. 56.1 ¶¶ 45, 49. As Evans was the victim of the crime at issue, Detective

Gildea and Detective Jaeger were entitled to assume his veracity. See Miloslavsky, 808 F. Supp.

at 355. There were no facts that would have caused the defendants to doubt Evans's veracity.

While plaintiff may allege that Evans's initial refusal to cooperate in the investigation

undermined his veracity, that argument fails, because Evans provided an explanation for this

refusal. Evans explained that before he learned that his brother Keith Gulley died from his

gunshot wounds, he did not want to cooperate with police officers because it was "street code" not to "snitch." Defs. 56.1 ¶ 36. However, after learning that Gulley had died and that his daughters had witnessed their uncle's murder, Evans made the decision cooperate in the investigation. Id. Based on Evan's explanation, the detectives reasonably believed that Evans was telling the truth when he identified plaintiff as the perpetrator, and the identification provided probable cause to prosecute. Accordingly, plaintiff cannot establish an absence of probable cause, which defeats his malicious prosecution claim as a matter of law.

Nor can plaintiff rebut the presumption of probable cause created by his indictment. Plaintiff attempts to rebut the presumption of probable cause by alleging, based on pure speculation, that defendants "succeeded in coercing false identifications of the Plaintiff as the murderer, when in fact, said witnesses informed Defendants that they did not recognize Plaintiff to be the murderer, and upon information and belief, such witnesses testified before the grand jury." Complaint ¶ 40. However, there is absolutely no evidence that defendants coerced Evans—the only eyewitness to testify before the grand jury (See Defs. 56.1 ¶ 46)—to identify plaintiff as the perpetrator. In fact, Evans testified to the exact opposite. Evans testified that before he viewed the lineup in which he identified plaintiff as the perpetrator, a detective told him that "[the detective] or anyone couldn't persuade [Evans] to say anything." Ex. A (Evans Trial Test.) at 1099:12 – 1100:2.

Furthermore, any argument that defendants suppressed evidence of Evans's initial refusal to provide information fails. Evans's initial refusal, and his explanation for that refusal, were memorialized in a DD5. See Ex. B (DD5 File) at D00430. The prosecuting Assistant District Attorney, with full awareness of Evans's initial refusal to cooperate, used Evans as the sole eyewitness before the grand jury that ultimately indicted him. Accordingly, plaintiff cannot

11

rebut the presumption of probable cause by showing that his indictment was procured by bad faith conduct, and his malicious prosecution claim fails.

**ii.    There is no evidence that the defendants falsified Wheeling's statements or coerced his identification, nor was plaintiff's indictment procured by such alleged conduct.**

It is undisputed that Wheeling identified plaintiff in a photo array as the gunman he saw flee from the scene of the shooting. Defs 56.1 ¶ 20. However, plaintiff's indictment was not procured using Wheeling's statements or identification, and plaintiff therefore cannot rebut the presumption of probable cause by alleging that the defendants manipulated Wheeling's statements or coerced his identification. Minutes after the shooting, Wheeling told nonparty Police Officer Alfonso Vargas that the perpetrator fled in a dark gray Ford Escape. Id. ¶ 5-6. About an hour later, Wheeling provided Detective Gildea and Detective Jaeger with a more detailed statement of events: that he had seen a black male emerge from a gray Ford SUV, proceed toward the scene of the shooting, and, immediately after the shooting, return to the gray Ford SUV with a gun in his hand. Id. ¶ 13. These statements were memorialized in a DD5. See Ex. B (DD5 File) at D00390. The next day, Wheeling made a positive photo array identification of plaintiff as the perpetrator. Defs. 56.1 ¶¶ 19-20.

While Wheeling's statements and photo array identification are undisputed by testimony and other admissible evidence, plaintiff alleges that in August of 2017, over four years after the shooting, Wheeling made an unsworn statement to a private investigator that conflicted with his 2013 statements as memorialized in DD5 # 4. The only evidence plaintiff has regarding Wheeling's alleged 2017 statements are the private investigator's report memorializing the statements. Of course, the alleged contradictory statements in the private investigator's report are inadmissible hearsay, and cannot be used to create a dispute of fact in an attempt to avoid summary judgment. As the Second Circuit has held, "only admissible evidence need be

considered by the trial court in ruling on a motion for summary judgment." <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009). "The principles governing admissibility of evidence do not change on a motion for summary judgment." <u>Id.</u> Accordingly, because Wheeling's hearsay statements to the private investigator would not be admissible at trial in this case, plaintiff is unable to rely on them at the summary judgment stage.

Moreover, even if Wheeling's alleged 2017 hearsay statements were admissible, plaintiff cannot show, as he must, that his indictment was procured using the allegedly falsified statements. Based on Wheeling's positive photo array identification, plaintiff was temporarily arrested. Defs. 56.1 ¶ 27. But plaintiff's arrest was voided and plaintiff was released immediately after Wheeling failed to make an outright positive lineup identification. <u>Id.</u> ¶¶ 28-31. Only after <i>Evans</i> identified plaintiff as the perpetrator was plaintiff arraigned on criminal charges. <u>Id.</u> ¶¶ 39-43. Wheeling did not testify before the grand jury, nor did the prosecutor utilize Wheeling's statements or photo identifications to procure plaintiff's indictment. Accordingly, plaintiff cannot meet his burden of showing that his indictment was procured by Wheeling's allegedly falsified statements or suggestive photo array identification, and his malicious prosecution fails on this basis as well. <u>See</u> <u>Greene</u>, 2017 U.S. Dist. LEXIS 37243, at *62. (holding that, where an allegedly coerced witness did not testify in the grand jury, the "plaintiff has made no connection between the defendants' allegedly coercive conduct toward witnesses and the indictment.")

### iii.    The defendants did not suppress video evidence.

Plaintiff alleges that unidentified police officers failed to collect a surveillance video from Goldie Maple Academy, a school located in the vicinity of the shooting. Plaintiff bases this allegation on the testimony of Angela Logan-Smith, principal of Goldie Maple Academy, who claims to have met with two unidentified police officers on May 6, 2013. Logan-Smith testified that she and the two detectives viewed a surveillance video that depicted a person

running on Beach 56th Street and a dark sedan driving by and surpassing the person. Defs. 56.1 ¶¶ 51-53.

As an initial matter, because they did not believe the security cameras located at Goldie Maple Academy would be of any value to their investigation due to the camera's location, neither Detective Gildea nor Detective Jaeger ever went to Goldie Maple Academy or viewed any surveillance footage recorded by the school's cameras. Id. ¶¶ 56-57. It is undisputed that nonparty detectives Velsor and Cappolla went to Goldie Maple Academy on May 4, 2013 to attempt to recover video from the school's surveillance cameras, but were told that the video would not be accessible until May 6, 2013. Id.  ¶ 25. While it is unknown whether Detective Velsor or Detective Cappolla ever returned to the school, both Detective Jaeger and Detective Gildea testified that they did not go to Goldie Maple Academy or view footage from its surveillance cameras. Detective Gildea and Detective Jaeger never met with Logan-Smith, and Logan-Smith does not know the identites of the officers with whom she met. Id. ¶¶ 55, 57. Accordingly, plaintiff's baseless allegation that the defendants suppressed video evidence fails.

In addition, even if plaintiff could establish that the defendants themselves were the detectives who viewed the video, which they were not, plaintiff would still be unable to establish that any alleged failure to collect such video violated his rights. Detective Gildea determined that based on the camera's location, it would not be of any value to their investigation.  Id. ¶ 14. The testimony of Logan-Smith confirms this to be true.  The surveillance camera was pointed at Beach 56th Street, not Beach Channel Drive, where the shooting took place. Id. ¶¶ 51-52. In addition, based on Logan-Smith's testimony, the video was not of sufficient quality to identify the person running, much less conclusively establish plaintiff's innocence. Logan-Smith testified that someone watching the video would not be able to

14

determine "facial features and specifics of the individual." Id. ¶ 54. The video was not even of a high enough quality to determine if the person was holding something. Id. There is not even any indication from Logan-Smith's testimony that the person depicted in the video had any involvement in the shooting. Therefore, no reasonable jury could find that the allegedly suppressed evidence "would conclusively establish the plaintiff's innocence or negate the possibility that plaintiff had committed the crime." Stukes, 2015 U.S. Dist. LEXIS 33223, at *17. Accordingly, plaintiff has not met his burden of showing (1) that the defendant detectives were personally involved in an alleged suppression of evidence, or (2) that his indictment was procured by the alleged suppression, and his malicious prosecution claim fails on this basis.

**B.     Plaintiff cannot demonstrate actual malice as a motivation for defendants' actions.**

In the context of a malicious prosecution claim, malice consists of "a wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 503 (1978)). Plaintiff must present admissible evidence of malice and may not merely infer malice where there are no facts upon which to base that assumption. Fulton v. Robinson, 289 F.2d 188 (2d Cir. 2002) (affirming grant of summary judgment for defendants after plaintiff failed to present evidence of actual malice). Rather, "there must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (internal quotation omitted). "[W]hile the absence of probable cause may bear on the malice issue, the two remain independent elements of a malicious prosecution action." Sulkowska v. City of New York, 129 F. Supp. 2d 274 (S.D.N.Y. 2001) (citation omitted). "Only where probable cause to initiate a proceeding is . . . totally lacking may malice reasonably be inferred." Wilson v. McMullen, No.

07-CV-948 (SLT) (LB), 2010 U.S. Dist. LEXIS 32335, at *18 (E.D.N.Y. Mar. 30, 2010) (quotation and citation omitted).

Here, plaintiff is unable to show that probable cause was "totally lacking." Indeed, plaintiff's indictment provided a presumption of probable cause, and Evans's repeated identification of plaintiff as the shooter reasonably led the detectives to believe that plaintiff had committed a crime. As such, no inference can be drawn that any defendants were motivated by malice.

Accordingly, plaintiff has failed to establish the necessary elements to prevail on a malicious prosecution claim, and the Court should grant defendants summary judgment as to that claim.

### POINT II

### PLAINTIFF'S DENIAL OF FAIR TRIAL CLAIM (COUNT 2) FAILS BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS FABRICATED OR SUPPRESSED EVIDENCE

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Bellamy v. City of New York, 914 F.3d 727, 745 (2d Cir. 2019) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). To prevail on a denial of fair trial claim, a plaintiff must prove that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012). To form the basis of a § 1983 claim, the alleged fabricated evidence "must be material; that is, it must proximately cause plaintiff to suffer a deprivation of liberty." Ashley v. City of New York, No. 14-CV-5559 (NGG), 2017 U.S. Dist. LEXIS 59201, at

16

*21-22 (E.D.N.Y. Apr. 17, 2017); see also Falls v. Pitt, No. 16-CV-8863 (KMK), 2021 U.S. Dist. LEXIS 58197, at *115 (S.D.N.Y. Mar. 26, 2021) ("Thus, Plaintiff is required to establish not only that the police fabricated evidence, but also that this evidence caused his deprivation of liberty."); Moroughan v. Cty. of Suffolk, No. 12-CV-0512 (EN)(AKT), 2021 U.S. Dist. LEXIS 13138, at *115 (E.D.N.Y. Jan. 20, 2021) ("The Second Circuit has held that the fabricated evidence must cause the deprivation of liberty.").

"The causation requirement is only met if there is sufficient evidence for a jury to determine that the fabricated evidence, as opposed to evidence that supported a finding of probable cause, caused the plaintiff to be deprived of his liberty." Walker v. City of New York, No. 11-CV-314 (CBA), 2014 U.S. Dist. LEXIS 197314, 2014 WL 12652345, at *9 (E.D.N.Y. Sept. 3, 2014). In other words, the plaintiff must show that the decision to prosecute would have been different if the fabricated evidence "'critically influenced' the decision to prosecute plaintiff, thereby resulting in a deprivation of his liberty." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 250 (2d Cir. 2020).

## A.    Plaintiff cannot show a denial of fair trial based on allegedly fabricated statements of Wheeling.

As discussed in Part I, supra, plaintiff has provided no admissible evidence to support his allegation that defendants fabricated Wheeling's May 3, 2013 statement as memorialized in DD5 # 4. Accordingly, plaintiff is unable to prove the essential element of his fair trial claim—that defendants fabricated evidence. Moreover, Wheeling's May 3, 2013 statement did not influence the decision to prosecute plaintiff—which was made only after the victim's identification of plaintiff—and moreover, was not admitted at trial, and thus did not impair "the truth-seeking function of the court proceedings." See Blair, 2009 U.S. Dist. LEXIS

29300, at *31. Accordingly, plaintiff cannot establish a denial of fair trial based on Wheeling's allegedly fabricated statement.

**B.    Plaintiff cannot show a denial of fair trial based on suggestive or coerced identification procedures.**

Where a plaintiff alleges a suggestive identification to support his fair trial claim, the evidence of the suggestive identification alone is insufficient. <u>Wray v. City of New York</u>, 490 F.3d 189, 193 (2d Cir. 2007). As the Second Circuit held in <u>Wray</u>:

> We have not held that a suggestive identification alone is a constitutional violation; rather, the constitutional violation is that [the plaintiff's] right to a fair trial was impaired by the admission of testimony regarding the unreliable identification …. In the context of an identification following a police procedure that was impermissibly suggestive, the due process focus is principally on the fairness of the trial, rather than on the conduct of the police, *for a suggestive procedure does not itself intrude upon a constitutionally protected interest.*

<u>Wray</u>, 490 F.3d at 193.

Here, there is no evidence that plaintiff's right to a fair trial was impaired by a coercive or suggestive identification. First, as discussed in Part I(A)(i), there is <u>no</u> evidence suggesting that defendants coerced Evans to identify plaintiff or testify against him before the grand jury or at trial. Indeed, Evans's own testimony controverts that allegation. <u>See</u> Ex. A (Evans Trial Test.) at 1099:24 – 1100:4. Second, plaintiff cannot show that Wheeling's allegedly suggestive or coerced photo array identification was material or a proximate cause of his deprivation of liberty. While plaintiff was briefly taken into custody following Wheeling's positive photo array identification,[2] plaintiff was released immediately after Wheeling failed to positively identify plaintiff in the lineup. After plaintiff's release on May 7, 2013, plaintiff did

---

[2] Again, plaintiff does not purport to assert a false arrest claim.  <u>See</u> FN 1, <u>supra</u>.

not suffer any further deprivation of liberty attributable to Wheeling's identification, and plaintiff was only rearrested on January 27, 2014 after Evans made a positive photo array identification. Defs. 56.1 ¶¶ 33-38. Accordingly, Wheeling's allegedly coerced photo array identification was not material to the decision to arrest plaintiff on January 27, 2018 and formally charge him on January 28, 2014. Thus, plaintiff cannot show that Wheeling's allegedly suggestive identification "critically influenced" the decision to prosecute plaintiff, thereby resulting in a deprivation of his liberty. See Frost, 980 F.3d at 250; see also Jovanovic v. City of New York, No. 04-CV-8437, 2010 U.S. Dist. LEXIS 144388, at *33 (E.D.N.Y., September 28, 2010), affirmed by 486 F. App'x 149 (2d Cir. 2012) ("The allegedly fabricated evidence was not material to the decision to detain Jovanovic during the pre-trial time period and, therefore, there is no genuine issue of material fact regarding this matter.") As such, plaintiff cannot prevail on his fair trial claim on this theory.

## C.    Plaintiff cannot prove a denial of fair trial claim based on a <u>Brady</u> violation because he was acquitted.

"A fair trial claim may also arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant." Fappiano v. City of New York, 640 F. App'x 115, 118 (2d Cir. 2016). This theory of liability "is essentially a civil claim seeking damages for a *Brady* violation." Id. "There are three components of a true Brady violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Hutchins v. Solomon, No. 16-CV-10029 (KMK), 2018 U.S. Dist. LEXIS 169421, at *50 (S.D.N.Y. Sep. 29, 2018). "Courts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial." McClean v. Cty. of Westchester,

No. 17-CV-4492 (CS), 2018 U.S. Dist. LEXIS 204269, at *48 (S.D.N.Y. Dec. 3, 2018); <u>see also</u> <u>Ventillo v. Falco</u>, No. 19-CV-03664 (PMH), 2020 U.S. Dist. LEXIS 239540, at *34 (S.D.N.Y. Dec. 18, 2020) ("[t]he jury verdict acquitting Plaintiff of the criminal charges resulting from his arrest negates any violation of his Brady rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence.") (internal quotation marks omitted).

Here, because plaintiff was acquitted of all charges, plaintiff cannot prevail on his fair trial claim on the theory that the defendants committed a *Brady* violation. In addition, to the extent plaintiff alleges that the defendants failed to turn over exculpatory surveillance footage from Goldie Maple Academy, that allegation fails on other grounds as well. As discussed in Point I(A)(iii), <u>supra</u>, it is undisputed that neither Detective Gildea nor Detective Jaeger ever viewed surveillance footage recorded by Goldie Maple Academy's cameras. Defs. 56.1 ¶ 52. In addition, as previously discussed, plaintiff cannot establish that the alleged surveillance video was favorable to him.

For the foregoing reasons, plaintiff is unable to prevail on his fair trial claim on any theory of liability, and defendants are entitled to summary judgment on that claim.

## POINT III

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS' ACTIONS WERE OBJECTIVELY UNREASONABLE

Qualified immunity shields government officials from suit where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Gonzalez v. City of Schenectady</u>, 728 F.3d 149, 154 (2d Cir. 2013) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). When an official raises a qualified

immunity defense, courts consider a two-step framework: (1) whether the official violated a statutory or constitutional right; and (2) whether the right was "clearly established" at the time of the alleged violation. Jones v. Treubig, 963 F.3d 214, 224 (2d Cir. 2020). Qualified immunity shields public officials "insofar as it was objectively reasonable for them to believe that their acts did not violate [a plaintiff's] rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citations omitted). The Supreme Court has firmly established that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity applies for malicious prosecution claims even where probable cause is ultimately found to be lacking, so long as there is "arguable probable cause." Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Simpson v. City of New York, 793 F.3d 259, 268 (2d Cir. 2015) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).

Here, the individual defendants are entitled to qualified immunity on plaintiff's malicious prosecution claims because they reasonably believed, even if mistaken, that there was probable cause to prosecute plaintiff based on Evans's photo array and lineup identifications. As set forth above, the law permits police officers to assume the veracity of a civilian victim making

a complaint. <u>Miloslavsky</u>, 808 F. Supp. at 355. Evans testified that no one had to persuade him to identify plaintiff in a lineup. Ex. A (Evans Trial Test.) at 1099:24 – 1100:4. Accordingly, it was objectively reasonable for the defendant officers to believe that prosecuting plaintiff did not violate plaintiff's rights. At the very minimum, reasonable officers could disagree as to whether there was probable cause to prosecute plaintiff under the facts presented in this case. <u>See</u> <u>Williams</u>, 2008 U.S. Dist. LEXIS 112729, at *50-51 (finding that the defendant police officer was entitled to qualified immunity because officers of reasonable competence could have disagreed about whether it was lawful to arrest plaintiff based on the victim's unsworn statement).

In addition, defendants are entitled to qualified immunity on plaintiff's denial of fair trial claim. As set forth in Point II, <u>supra</u>, there is insufficient evidence for a jury to conclude that defendants fabricated or suppressed evidence in the first instance. But even assuming *arguendo* that any fabrication took place, neither plaintiff's indictment nor his criminal trial were impacted by any of the alleged fabrications, because the allegedly fabricated evidence was not used. It was therefore reasonable for the individual defendants to believe that plaintiff's clearly established right to a fair trial was not being violated.

For these reasons, the individual defendants are shielded by qualified immunity on all of plaintiff's claims.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Detective Michael Gildea, and Detective Quinn Jaeger respectfully request that the Court grant their motion for summary judgment and dismiss plaintiff's complaint in its entirety, together with such other further relief as this Court may deem just and proper.

Dated:     New York, New York
           April 16, 2021

                                        JAMES E. JOHNSON
                                        Corporation Counsel of the
                                          City of New York
                                        *Attorney for Defendants City of New York,*
                                          *Gildea, and Jaeger*
                                        100 Church Street, Third Floor
                                        New York, New York 10007
                                        (212) 356-2409


                         By:     *GStannard*
                                 _____
                                 Geoffrey M. Stannard
                                 *Assistant Corporation Counsel*
                                 Special Federal Litigation Division


To:    **BY EMAIL**
       Fred Lichtmacher, Esq., *Attorney for Plaintiff*

23